United States District Court
Southern District of Texas

**ENTERED**

April 24, 2026

Nathan Ochsner, Clerk

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| IN RE FIRST BRANDS GROUP, LLC | § | BANKRUPTCY CASE NO. 25-90399 |
| | § | |
| EDWARD JAMES, | § | |
| Appellant, | § | |
| v. | § | CIVIL ACTION NO. H-26-513 |
| OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF FIRST BRANDS GROUP, LLC, *et al.*, | § | |
| Appellees. | § | |
| QBE INSURANCE CORPORATION, *et al.*, | § | |
| Appellants, | § | |
| v. | § | CIVIL ACTION NO. H-26-962 |
| OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF FIRST BRANDS GROUP, LLC, *et al.*, | § | |
| Appellees. | § | |

**MEMORANDUM AND OPINION**

The Official Committee of Unsecured Creditors of First Brands Group, LLC moves to dismiss the Side A insurers' appeal of the Bankruptcy Court's D&O Order, (Docket Entry No. 44), which held in part "that Debtors have an interest in the proceeds of the ABC Policy, and that interest is property of the estate under § 541," (Docket Entry No. 1-1 at 9).  Based on a careful review of the motion, the response, the reply, the record, and the applicable law, the motion to dismiss, (Docket Entry No. 44), is denied.  The reasons for this ruling are set out below.

Before filing their bankruptcy petition, the debtors purchased two insurance policies: an ABC Policy and a Side A Policy. (Docket Entry No. 1-1 at 216–218). Both policies are $100 million insurance towers, with a $10 million primary policy and nine layers of $10 million excess policies. (*See id.*; *see also* Docket Entry No. 46 at 3–5 (depicting the tower)). The ABC Policy includes three types of coverage: The A Side is for directors and officers when they are not indemnified by the debtors; the B Side is for the debtors to the extent they indemnify directors and officers for covered losses; and the C Side is for specified claims against the debtors directly. (*See* Docket Entry No. 47-1; Docket Entry No. 1-1 at 216–218). The Side A Policy provides excess insurance on the A Side of the ABC policy. (*See* Docket Entry No. 44 at 7–8 (citing Docket Entry No. 29-25 (Side A Policy) § 1, Endorsement 9)). The Bankruptcy Court ruled that (1) the proceeds of the ABC Policy are "property of the estate"; and (2) that "the proceeds of the Side A Policies are not property of the estate." (Docket Entry No. 1-1 at 9). As a result of the first ruling, the Side A insurers must "drop down" in the tower and pay the costs of ongoing litigation against the debtors' directors and officers. (*See* Docket Entry No. 44 at 7–8; Docket Entry No. 46 at 5–6; Docket Entry No. 46-7). The Side A insurers did not litigate these issues below, but they have now appealed the D&O Order. (*See* Docket Entry No. 43).

The Committee moves to dismiss the appeal for two reasons: (1) the Side A insurers do not have standing to appeal because they are not "aggrieved" by the D&O Order; and (2) the Side A insurers cannot appeal because they did not "appear and object" to the relevant motion in the Bankruptcy Court. (*See generally* Docket Entry No. 44). Neither argument warrants dismissing the appeal.

First, the Side A Insurers are "aggrieved" by the Bankruptcy Court's D&O Order. "Standing to appeal a bankruptcy order is narrower than Article III standing." *In re Black Elk*

*Energy Offshore Operations, LLC*, 114 F.4th 343, 351 (5th Cir. 2024) (citing *In re Technicool Sys., Inc.*, 896 F.3d 382, 385 (5th Cir. 2018)). "Under the 'person aggrieved' test, only persons directly, adversely, and financially impacted by a bankruptcy order may appeal it, and their standing must be connected to the exact order being appealed." *Id.* (cleaned up). The D&O Order imposes a direct, adverse, and financial impact on the Side A insurers: after and because of the D&O Order, they received an immediate demand to "drop down" into the ABC Policy's "place" and to "advance" and "reimburse defense fees" incurred by the insureds. (Docket Entry No. 46-7 at 2). Some Side A insurers have agreed to advance defense costs, and those policies are likely to be exhausted quickly. (*See also* Docket Entry Nos. 46-8, 46-9). The D&O order imposes an immediate "burden" on the Side A insurers' "pocket." *Technicool Sys.*, 896 F.3d at 386.

The Committee responds that the Side A insurers' alleged injury is indirect, suggesting that the Fifth Circuit does not permit standing based on the "sequencing or priority" of payment obligations. (Docket Entry No. 44 at 7). But a closer look at each of the cases the Committee cites does not support such a hard-and-fast rule. To be sure, the Fifth Circuit has been skeptical of alleged injuries based on a change in the sequencing or priority of the appellant's claim or payment obligation, but that is only because, in context, the change in sequencing or priority had little financial significance. *See, e.g.*, *Rohm & Hass Texas, Inc. v. Ortiz Bros. Insulation*, 32 F.3d 205, 211 (5th Cir. 1994) (a chain of possibilities—"greater *potential* liability *should* it ever file for bankruptcy"—was too "attenuated" to support standing (emphasis added)); *In re Coho Energy*, 395 F.3d 198, 203 (5th Cir. 2004) (a change in payment priority did not confer standing because there was only a "remote possibility" the fund would be depleted before the appellant was paid); *see also Black Elk*, 114 F.4th at 351–52 (permitting a trustee to pursue a claim against the appellant does not confer standing because there is only the potential for liability on that claim). By contrast,

the liability here is more than potential.  The Side A insurers have already received payment demands—and will start exhausting policies—because of the D&O Order.  (Docket Entry No. 46-7 at 2; *see also* Docket Entry Nos. 46-8, 46-9).

The Fifth Circuit's decision in *Ross v. Marshall*, 426 F.3d 745 (5th Cir. 2005), is instructive on why the financial burden on the Side A insurers is sufficient to support standing to appeal.  In *Ross*, the Fifth Circuit held that a district court erred by denying an insurer's motion to intervene as of right to appeal a money judgment against its insured.  *See id.* at 761.  The Fifth Circuit identified one of the relevant questions as whether "the insurer's interest in minimizing its insured's liability is sufficiently direct to permit intervention as of right when the insurer defends under a reservation of rights."  *Id.* at 758.  The court noted that "an interest sufficient to justify intervention under Rule 24(a) 'must be direct, as opposed to remote or contingent.'"  *Id.* at 758 (quoting *Restor-A-Dent Dental Lab'ys, Inc. v. Certified Alloy Prods., Inc.*, 725 F.2d 871, 874 (2d Cir. 1984)).  The court concluded that the insurer had a sufficient interest for intervention because, "[w]ithout question, an insurer has a financial stake in securing a favorable outcome for its insured in a lawsuit alleging potentially covered claims."  *Id.* at 757.  The court added that the financial stake was sufficiently direct because "[a]ll that remains in order for Allstate to be fully liable for the judgment up to its policy limits is a finding of coverage or liability in a suit on extra-contractual damages."  *Id.* at 759.

*Ross*'s logic applies to the Side A insurers.  The D&O Order is a "DIC Event" under the Side A policies that requires the Side A insurers to "drop down" in the tower and cover defense costs for covered claims.  (Docket Entry No. 46 at 9; Docket Entry No. 46-7 at 2; *see also* Docket Entry No. 44 at 7–8).  Just as the judgment against the insured in *Ross* triggered the insurer's contractual obligation, the D&O Order triggered the Side A insurers' contractual obligations.  In

*Ross*, the Fifth Circuit held that the insurer's financial obligation was sufficiently direct to appeal the money judgment despite the fact that the insurer's obligation was contingent on a coverage finding. Given this precedent, this court holds that the Side A insurers' financial obligation is sufficiently direct to appeal the D&O Order, despite the fact that the Side A insurers may or may not dispute coverage in whole or in part. (*See* Docket Entry No. 46-8 at 4 (agreeing to coverage under a reservation of rights)). The Side A insurers are "aggrieved" because the D&O Order forces them to pay money now.

Second, the Side A insurers can appeal even though they did not "appear and object" to the D&O Order below. This court has held that a claimant who does not appear and object to a court's confirmation order cannot appeal it. *In re CJ Holding Co.*, 597 B.R. 597, 609 (S.D. Tex. 2019) (Rosenthal, J.) (citing *In re Palmaz Sci. Inc.*, 262 F. Supp. 3d 428, 437 (W.D. Tex. 2017)). "Bankruptcy proceedings are complex both in the number of parties involved and the number of issues at play." *Palmaz Sci.*, 262 F. Supp. 3d at 434. Efficient proceedings and final orders are necessary to successful reorganizations. "Requiring potential claimants to take the simple step of filing a proof of claim or lodging an objection before the bankruptcy court" furthers those goals. *Id.* Allowing "dilatory late-comers or, worse yet, those strategically withholding claims and objections with the goal of asserting them only on appeal" would substantially undermine them. *Id.* If parties receive notice that complies with due process, courts generally should not allow them to appeal rulings they did not contest below. *See CJ Holding*, 597 B.R. at 609–10; *Palmaz Sci.*, 262 F. Supp. 3d at 436–37.

But this case presents a warranted exception. The Side A insurers are not appealing a fresh issue that was not litigated below. They are in effect joining Edward James's appeal: the Side A insurers plan to file "a single joint Opening Brief" with James, and they agree that they are bound,

for preservation purposes, by James's "underlying Motion for Relief from the Automatic Stay." (Docket Entry No. 46 at 12). The Side A insurers are again similar to the insurer in *Ross*, who intervened to appeal, assumed the insured's legal position, and did not upset "the orderly processes of the court." *Ross*, 426 F.3d at 755; *see ODonnell v. Harris County*, 808 F. Supp. 3d 738, 761 (S.D. Tex. 2025) (explaining that intervention is minimally prejudicial when the intervenor "accept[s] the . . . the law of the case and s[eeks] to protect its interests from then on").

The difficulty here is that James is appealing, so the Side A insurers' appeal may be duplicative and unnecessary. *See Sierra Club v. Espy*, 18 F.3d 1202, 1206 (5th Cir. 1994) (discouraging premature intervention "that wastes judicial resource"); *Ross*, 426 F.3d at 755 & n.39 (same). But this factor is not dispositive. The appellants have already committed to filing a joint opening brief, (Docket Entry No. 46 at 12), and the parties have already agreed to an efficient schedule for litigating this appeal, (Docket Entry No. 43). There is minimal prejudice to the Committee or to the bankruptcy proceeding, and the court is prepared to promptly address scheduling or briefing issues as they arise. Enforcing a prudential appear-and-object requirement does not appear prudent in this case.

For these reasons, the motion to dismiss the Side A insurers' appeal, (Docket Entry No. 44), is denied.

SIGNED on April 24, 2026, at Houston, Texas.

_____
Lee H. Rosenthal
Senior United States District Judge